(38 Misc. Rep. 553.)

### HOFFMAN v. DURYEA.

(Supreme Court, Special Term, New York County. August, 1902.)

1. EQUITY—CONTRACT—FAILURE OF CONSIDERATION—RELIEF.

    A designer of a patent for a machine entered into a contract with defendant that he would, with moneys of the defendant, construct a successful, workable machine, and that, in the event of his doing so, defendant would organize a corporation to develop the machine, and furnish the necessary capital, whereupon the designer assigned to the defendant an interest in the machine and its patents. After two years he failed to produce a successful machine. *Held* that, in view of the failure of the consideration without the fault of either party, equity would restore both to their original situations, and would compel the defendant to re-assign his interest in the invention and its patents on the designer's paying the expense of the assignment, and would relieve both parties from any further obligations under the contract.

Action by John J. Hoffman against Walter E. Duryea to compel defendant to re-assign a three-fourths interest in certain patents assigned by plaintiff to defendant, and for damages for breach of contract. Judgment for plaintiff.

Hawes & Judge, for plaintiff.
Robert B. Honeyman, for defendant.

WRIGHT, J. The plaintiff was the inventor of a contrivance which he claimed to be a new and useful improvement in cornstarch paper boxes. The ordinary box, when roughly handled, sifted out a trifle of its contents at the top, especially when being opened for use. The plaintiff claimed that his invention largely strengthened the top, making it nonsifting under somewhat rough usage. Commercial success depended upon supplying the market without material increase in price over that of the old style. The plaintiff disclosed to the defendant his

theory for constructing his improvement (called a "nonsifting box"), and his plans for constructing a machine for its manufacture, which he represented would simplify the method then pursued, and thereby reduce the cost of production below the price then current for the old and less desirable style of boxes. The plaintiff testified:

"My idea was to get up a machine and get it patented,—a machine that would be able not only to run out boxes of any style, but to do the printing, and do away with the [separate] labeling; that is, run out boxes so rapidly [that] we could then put the boxes on the market at a cheaper rate than any one else could. This machine, as I expected, would take the paper from the raw state,—from the mill,—onto the rollers, send it to the scoring knives, and print and close it, * * * and do the cover, and turn out the boxes at a very rapid rate. I explained that to Mr. Duryea, and he said: 'This will do, if it works all right.'"

The patents in question related to the new device for inclosing the top of the box, giving it greater resistance to careless and rough handling. The plaintiff thus far had only the plans and drawings of the invention for making the box and the machine. He possessed no money to manufacture the box or to defray the expenses of experiments necessary for developing the proposed machine. Thereupon the plaintiff and the defendant entered into an agreement whereby the plaintiff assigned to the defendant a three-fourths interest in his invention for the nonsifting box, upon which the patents were thereafter issued. The defendant agreed that he would also furnish the money reasonably necessary for developing the machine under the plaintiff's supervision, and that, in case the plaintiff produced a machine fulfilling his representations, he (the defendant) would organize a company having capital stock of $200,000, of which he would own $150,000 and the plaintiff $50,000, and that he (the defendant) would also furnish $50,000 for working capital. The plaintiff contends that the defendant absolutely and unconditionally agreed, in consideration of the plaintiff's said assignment, that he would organize the stock company and furnish the working capital aforesaid.

In view of the conflicting testimony, we must seek aid from the surrounding circumstances, and the probabilities, in ascertaining the truth respecting the bargain or understanding between the parties. From the fact that the feasibility of the construction of the required machine had not been demonstrated, but was regarded by the parties as lying in the realm of possibilities, and dependent upon experimental determination, and from all the facts and circumstances proven, it is unreasonable to infer, on the one side, that the plaintiff promised absolutely to produce it, or, on the other hand, that the defendant promised absolutely and unconditionally to form the stock company and furnish the working capital. The production of the required machine was clearly understood by the parties as a condition precedent to the defendant's promise to form the stock company. After making said agreement, the plaintiff spent the larger part of two years working and personally supervising the work of a machinist in attempting to construct the required machine. The defendant furnished the plaintiff for expenditure, in his experiments in constructing the machine, about $3,000, which was a reasonable sum for that purpose; and the plaintiff had a reasonable time within which to perform his part of this branch

of the contract. The machine which resulted from the efforts above mentioned was a failure on account of the following:

"(a) The box produced was faulty in appearance. The printed matter on the wrapper (stating the name of the contents and the various methods for preparing them for food, etc.) was somewhat blurred and indistinct, and otherwise unpresentable. The printing also lacked uniformity, some boxes being better and some worse in appearance than others. One cause of this defect was due to the necessity of doing the printing on the boxes by means of curved plates or small cylinders, which is very difficult.

"(b) The cost of manufacture was greater than the cost of the old style of boxes, and was so much greater as to be prohibitive of sale on the market; the cost of manufacturing the old style being about $2.37, and that of the new style over $3, per·thousand. According to the undisputed testimony, the competition is so great that an increase of fifty cents per thousand in the expense of manufacture is very material for consideration, as that sum often measures the difference between profit and loss on the sale of a thousand boxes of starch."

Both parties conceded at the close of a three months' trial of the machine that it was a failure, and any further attempt to construct one that would do the required work was thereupon, in the fall of 1895, abandoned, and nothing further was done until April 5, 1901, when this action was begun. The plaintiff endeavors to cast blame for the failure upon the defendant, claiming that manila cardboard should have been furnished, instead of strawboard with manila covering. The board which was furnished was of good quality for the purpose used. Had the plaintiff believed that the strawboard with manila covering was an obstruction to his success, an outlay by him of a dollar or two in the purchase of such material as he desired would have enabled him to make a test and demonstrate the correctness of his theory. He also urges that the printing rollers should have been equipped with steel plates instead of electrotypes. But the only ground of objection being that electrotypes are less durable for long service than steel, that objection is immaterial. He also urges that some standards of the machine should have been iron, instead of wood. I find no. force in either of these objections. The defendant was anxious for the successful construction of the machine, and afforded the plaintiff every reasonable means and facility to accomplish that end. The agreement which the parties made was divided into two branches; the first being for the construction of the required machine, and the second branch being for the formation of the manufacturing company. The agreement was understood by the parties to be thus divisible. The enterprise for constructing a successful machine was a joint one, and was a condition precedent to the further enterprise of forming the·company. Furnishing the money by the defendant for building the machine was understood, in that branch of the agreement, to be offset by the plaintiff's labor and inventive skill expended for that purpose. The performance of the condition precedent is, so far as the testimony shows, impossible. The consideration for the interest in the invention and patents which the defendant received utterly failed without his fault, and also without the fault of the plaintiff. There is no consideration to support the assignment. The defendant does not ask the plaintiff to fulfill his part of the contract by producing the required machine, but resists fulfillment on his own part, in respect to forming the stock

company, on the ground of the plaintiff's failure to produce the required machine. Upon the foregoing facts, equity will relieve the plaintiff from performance of his part of the bargain respecting ·the· building of the required machine, and will relieve the defendant from his obligation to form a stock company, and will place the parties in statu quo by requiring the assignment of the interest in the patents demanded in the complaint.

Before beginning the action the plaintiff requested the defendant to assign to him said interest in the invention and patents mentioned in the complaint, but it does not appear that he offered to defray the expenses thereof. The defendant was not obliged to defray that expense, even though it be small. It follows from the foregoing remarks that the plaintiff, upon tendering to the defendant for execution a properly prepared draft of an assignment of said interest, and defraying the official expense of the execution and acknowledgment thereof, is entitled to its execution and delivery. In case the defendant refuses to execute and acknowledge it, the sheriff may execute the same in the name of the defendant; and upon filing an affidavit of that fact with the clerk costs may be taxed against the defendant, but if he executes and delivers the assignment no costs are allowed to either party. Findings and judgment may be prepared accordingly

Judgment accordingly.